**CRUTCHFIELD et al. v. MELTON et al.**
No. 35873.

Supreme Court of Oklahoma.
May 11, 1954.

Covington & Donovan, Tulsa, for petitioners.

L. Keith Smith, Joe T. Dewberry, Jay, Mac Q. Williamson, Atty. Gen., for respondents.

DAVISON, Justice.

This is an original proceeding in this court to review an award of death benefits under the Workmen's Compensation Law, 85 O.S.1951 § 1 et seq., made by the State Industrial Commission in favor of Aronda Melton, as claimant, for the use and benefit of herself and her minor children, against V. W. Crutchfield, employer, and United States Fidelity and Guaranty Company, his insurance carrier, as respondents, for the death of claimant's husband, Dorthern Eugene Melton, the father of her children.

The parties will be referred to as they appeared before the Commission.

This is a companion case to the case of Crutchfield v. Bogle, Okla.Sup., 270 P.2d 640, in that the deceased husband of the claimant therein and the deceased husband of the claimant herein were working together and were killed by the same bolt of lightning. The two men were engaged in the work of clearing a right-of-way for a rural electrification transmission line. Their work was on a tractor with a bulldozer attached and they were engaged in pushing the felled timber out of the right-of-way. On the afternoon of May 2, 1952, at about 3:30 o'clock in the afternoon, a violent rain and electrical storm occurred in the area where they were working. A short time later, their bodies were found under a large oak tree, their feet almost together at the foot of the tree and their bodies extending out in opposite directions. They had been struck by lightning. Some thirty feet away stood the tractor with motor still running.

Two of the propositions here presented are the same as those relied upon in the Bogle case, namely, capacity of the claimant to maintain the proceeding and lack of jurisdiction of the Commission to make any award because the deaths did not arise out of the employment. The claim before the Commission, in the case now before us, was filed by the claimant as widow, under the provisions of 12 O.S.1951 § 1054. In the case of E. G. Nicholas Const. Co. v. State Industrial Commission, 207 Okl. 428, 250 P.2d 221, it was held that such claim could not be filed nor prosecuted by the widow unless it be shown that no administrator for the deceased's estate had been appointed. The record here contains no such proof but, since the filing of briefs, there has been filed a certificate of the court clerk of the county of defendant's residence showing such non-appointment. Attached thereto is stipulation to that effect signed by the attorneys for all parties except the petitioners herein. It therefore serves as an amendment to the record and supplies the deficiency.

The question of whether or not the death arose out of the employment was determined in the Bogle case above cited. The rules of law and the reasoning in support thereof contained in said opinion on that point are hereby adopted and made a part of this opinion.

The other proposition for determination herein has no connection with, or bearing upon, the issues in the Bogle case. It is dependent upon the application of the loaned servant doctrine. The deceased, Dorthern Eugene Melton was in the general employ of D. C. Evans, an individual who owned a ranch through which the right-of-way was being cleared. He was employed by Evans as the operator of the tractor and dozer combination being used at the time of his death. Crutchfield had contracted with Evans for the rental of the equipment upon an hourly basis with Evans to furnish the machine, the necessary supplies, the maintenance and the services of the operator. Melton was paid a monthly salary by Evans and generally was under the supervision of one Gibson, the manager of the Evans Ranch. The tractor equipment was a valuable piece of machinery requiring operation by a capable person and Evans would not rent it without also having his expert employee in charge of it for operation and maintenance.

The first few days, however, because of Melton's illness, Gibson operated it. Upon Melton's return to work, he was directed by Gibson to operate the equipment taking orders from Crutchfield and Bogle. At the time of their deaths, Melton and Bogle were engaged in pushing the felled timber out of the right-of-way. The question now before us for determination is—In whose employ was Melton when he met his death? D. C. Evans and his insurance carrier, Casualty Reciprocal Exchange, were additional parties respondent before the Commission, whose order and award was against the respondent Crutchfield and his insurance carrier only.

The application of the loaned servant doctrine in any given case presents one of the nicest questions for any court's determination. This is particularly true when the spheres of control of both employers, general and special, overlap. In the case of Wylie-Stewart Machinery Co. v.

Thomas, 192 Okl. 505, 137 P.2d 556, 557, the the applicable rules were thoroughly and definitely discussed and stated. It was there held that:

"It is well settled that one who is the general servant of another may be loaned or hired by his master to another for some special service so as to become, as to that service, the servant of such third person.

"Servant lent by master to another for particular employment, although remaining general servant of master, must be dealt with as servant of one to whom he is lent, as regards anything done in the latter's employment.

\*   \*   \*   \*   \*   \*

"In determining whether general master of servant or person to whom servant was lent is liable for servant's acts, neither payment of wages nor power to hire and discharge is controlling."

■ The cited case established, in this jurisdiction, the rule that the relationship is to be "judged by the nature of the duty being performed by the servant at the time, and which of the two masters is exercising control." The question to be answered in making the determination is—In the act which the servant was performing at the time, was he in the business of and subject to the direction of the temporary employer as to the details of such act?

■ Those rules were discussed in the more recent case of Hodges v. Holden, 204 Okl. 327, 229 P.2d 555, wherein it was held that, at the specific time, the servant was under the control of the general employer, whereas, in the Wylie-Stewart case, supra, it was held that he was under the control of the special or temporary employer. The distinction made was that, in the Hodges case, the work being performed was part of the regular business of the general employer. In some cases it is of indirect benefit to consider whether or not the general employer stands in the theoretical position of an independent contractor rather than a loaning employer as regards the act being performed. This method of reasoning readily distinguishes the Wiley-Stewart

case and the case at bar from the Hodges case and also the cases of Burrows v. State Industrial Comm., 188 Okl. 523, 111 P.2d 175 and B. & M. Construction Co. v. Anglin, 185 Okl. 543, 94 P.2d 907, also cited and relied upon herein by respondent Crutchfield.

In the case at bar, Evans was not engaged in the business of hiring out tractors and bulldozers with drivers for them. He had no control over Melton as to the method and manner of doing the work for Crutchfield. He was truly a general or loaning employer. The work being done by Melton was directed by Crutchfield in manner, method, and detail. The only responsibility owed by Melton to Evans was as to the care and proper use of the machine. He was engaged in the business of and subject to the direction of the temporary employer, Crutchfield. The Commission was therefore correct in rendering the award against Crutchfield and his insurance carrier.

Award sustained.

JOHNSON, V. C. J., and WELCH, CORN, ARNOLD, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.